**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALTER CURTIS MOLES,** | : | **CIVIL ACTION NO. 1:06-CV-0665** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **RONNIE HOLT,  Warden, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) filed by petitioner, Walter Curtis Moles ("Moles"), an inmate confined at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill")in Minersville, Pennsylvania.[1]  Moles alleges that his constitutional rights were violated in the context of a disciplinary hearing.  For the reasons that follow, the petition will be denied.

## I.    Statement of Facts

In an August 1, 2005 incident report, Moles was charged with the following Bureau of Prisons ("BOP") disciplinary code violations:  insolence toward a staff member in violation of Code 312, interfering with staff in the performance of duties

---

[1] In addition to naming the warden as a respondent, Moles named Discipline Hearing Officer Kevin Bittenbender, Regional Counsel Henry Sadowski and Harrell Watts, National Inmate Appeals Administrator.  The only proper respondent in a § 2241 habeas proceeding is the custodian of the prisoner, in this case Warden Ronnie Holt.  See Rumsfield v. Padilla, 542 U.S. 426, 434-35 (2004) (stating that "custodian" is generally the warden of the facility where the prisoner is in custody).

in violation of Code 398, and conduct which disrupts or interferes with the security

or orderly running of a BOP facility in violation of Code 399.  (Doc. 1-1, p. 28).  The

incident, which appears to have occurred during the transfer of Moles from the

United States Penitentiary at Lewisburg ("USP-Lewisburg"), to the Federal

Correctional Institution at Schuylkill ("FCI-Schuylkill"), was described by the

reporting officer as follows:

> On the above dated time, inmate Moles . . . became insolent and
> disruptive while I was applying restraints.  He began arguing with
> me over a pair of ripped bus pants.   He became increasingly
> louder, calling me a 'f[---]ing idiot."  The bus lieutenant had to step
> in and remove the inmate from the crowded holding cell so we
> could continue applying restraints to the remaining inmates
> present.  When returned to the holding cell, I/M Moles continued
> to argue with me, and make comments such as "I'll fix his ass
> when I file" to other inmates present.

(Doc. 1, p. 15).  Upon arrival at FCI-Schuylkill, he was informed that he was being

placed in the Special Housing Unit pending an investigation into the stated code

violations.  (Doc. 1, p. 32).  Upon delivery of the incident report, he stated that he

"did nothing like that" and requested thirteen witnesses.  (Doc. 1, p. 15).

Based upon the serious nature of the charges, the Unit Disciplinary

Committee referred the matter for a disciplinary hearing on August 3, 2005.  (Id.).

On the same day, Moles was notified that the matter would be placed on the next

available discipline hearing docket.  In addition to requesting a staff representative,

he requested a total of five witnesses be present at the hearing.  (Id.).  Four of the

witnesses were inmates who would testify that he was "placed in a black box" and

was given torn paper pants.  Moles also requested the presence of the bus

lieutenant from USP-Lewisburg, despite not knowing to what the lieutenant would

testify.  (Id.).

On August 9, 2006, Moles submitted a Freedom of Information Act request

seeking the names of staff members who worked in the "Receiving and Discharge"

section of FCI-Schuylkill, and the names of the inmates who were transferred with

him from USP-Lewisburg to FCI-Schuylkill, *inter alia*.  (Doc. 1, pp. 17-18).

The disciplinary hearing was held on August 15, 2006.  Moles was

represented by a staff member.  No procedural issues were cited.  No documentary

evidence was provided.  However, Moles made the following statements:

> I want it on the record that I am requesting thirteen other
> witnesses (Inmates) and was told by my unit team that I would
> need to file a FOI request to obtain their names.
>
> During the strip search process, I was handed a pair of khaki pants
> and the officer gave the other inmate a pair of blue (paper) bus
> pants.  I gave the other inmate my pair of pants (khaki) and took
> the pair of blue pants from the other inmate; the other inmate
> (Creel) told me the officer told him to come in the cell and kick my
> ass because that is the reason for him getting the blue paper pants.
>
> When I was putting on the pants, they had ripped so when they
> (the officers) were putting on the restraints, I was confronted by
> the officer and was told I ripped the pants on purpose.  The
> lieutenant told me not to be acting up and Officer Bensinger said
> he wanted to put restraints on me and when it was all over with, I
> had a black box on.  I told Armstead, I was going to file and the
> officer threatened me and put me up against the wall.

(Doc. 1, p. 29).  Three inmate witnesses also presented testimony on his behalf.

(Doc. 1, p. 29).  The DHO found that their testimony conflicted with the testimony

provided by Moles.  Specifically, "[t]he testimony provided by his witnesses are

3

hearsay testimony which Moles had informed them of what was said by the officer. In addition, the witness statements indicate the pants were already ripped and were initially issued to Moles.  This again conflicts with the inmates [sic] statement." (Id.) Moles' request for additional witnesses was handled as follows:

> Inmate Moles requested an unidentified inmate named Scott and Lieutenant Ware (USP Lewisburg) as witnesses to present testimony on his behalf.  The DHO informed Moles his witnesses could not be summoned due to the Lieutenant not being assigned to FCI Schuylkill and was not at the institution.  In addition, the DHO informed Moles only having one part of a name was not sufficient to accurately identify the inmate he is requesting. Moles refused to waive his request for these witnesses.  In addition, Moles requested thirteen other unidentified inmates which Moles claimed to be present during this incident.  Moles did not know their names nor if these inmates were housed at FCI Schuylkill.

(Id.).  Upon questioning by the DHO, Moles denied the charges and stated that the incident never took place as described in the incident report.  (Id.).  The DHO found "Moles [sic] actions, mannerisms and comments supportive of being insolent toward the officer and interfered with the performance of his duties during the bus operations."  (Id.)

Based upon all the evidence presented, the DHO concluded that the greater weight of the evidence supported a finding that Moles committed the act of insolence towards a staff member in violation of Code 312.  Moles was sanctioned with disciplinary segregation, disallowance of thirteen days of good conduct time, forfeiture of six days of non-vested good conduct time, and loss of commissary, phone and visiting privileges for a period of one year.  (Doc. 1, p. 31).  The Code 398 and 399 charges were found to be duplicative and were expunged from his record.

4

Following unsuccessful administrative appeals (Doc. 1, pp. 33-39), Moles filed the present petition alleging that he was denied witnesses, that the decision was not supported by the evidence, that no investigation was conducted, and that the sanctions imposed were too harsh.

II.   **Discussion**

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates, or attempts to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly unless circumstances beyond the control of the investigator intervene.  28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing.  28 C.F.R. § 541.15.  Because Moles was charged with an offense in the greatest severity category, the matter was referred for a disciplinary hearing.

Greatest severity category offenses carry a possible sanction of loss of  good conduct time credits, *inter alia*.  28 C.F.R. § 541.13.  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires

5

that the prisoner receive: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).

 A. Witnesses

 Moles contends that he was not afforded the opportunity to call witnesses in his defense.  A prisoner has the limited right to call witnesses who have relevant information and would not present a threat to penological interests.  See Wolff, 418 U.S. at 566-67; 28 C.F.R. § 5471.17(c).  Inmates do not have an absolute, federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  Id. at 567-68. See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young v. Kann, 926 F.2d 1396, 1404 (3d Cir.1991); Sanchez v. Roth, 891 F. Supp. 452, 458-59 (N.D. Ill.1995); Harrison v. Pyle, 612 F. Supp. 850, 854-55 (D.Nev. 1985).

 The applicable regulation provides that "[t]he DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available. . . .  The DHO need not call repetitive witnesses.  The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials

supplied to the DHO. . . .  The DHO shall document reasons for declining to call requested witnesses in the DHO report. . . ."  28 C.F.R. § 541.17(c).

At the hearing, Moles indicated that he wanted the bus lieutenant to appear as a witness.  However, "he did not know what he would testify to because he was lis [sic] as an adverse witness."  (Doc. 1, p. 9).  Moles' request was denied because the witness, a BOP employee assigned to a different facility, was not reasonably available.  Moles argues that the failure to have the bus lieutenant violated his due process rights.  Significantly, the right to call witnesses extends to the presentation of witnesses and documentary evidence in the inmate's defense.  Moles concedes that the witness was adverse to him.  Thus, he had not right to have him called.  Further, there was no need to call the bus lieutenant because his role was adequately summarized in the incident report, and any testimony would have been repetitive of the information in the incident report and the testimony elicited at the hearing.  Consequently, the Court finds no error in the DHO's decision not to call the bus lieutenant.

Likewise, the court finds no error in the DHO's denial of Moles' request to have an additional thirteen inmate witnesses appear on his behalf because any further testimony concerning the incident would have been repetitive.

B.    Sufficiency of the Evidence

Moles also contests the sufficiency of the evidence.  (Doc. 1, pp. 10, 12).  The DHO's decision is required to be supported by some evidence in the record.  See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d

1396, 1402-03 (3d Cir. 1991) (applying <u>Hill</u> standard to federal prisoner due process challenges to prison disciplinary proceedings).  The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced.  <u>See</u> <u>Hill</u>, 472 U.S. at 455.  Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether any evidence in the record that could support the DHO's conclusion.  <u>See</u> <u>id</u>.

Reviewing the evidence, as recited in the statement of facts section, *supra*, the court finds that there was "some evidence" to support the disciplinary hearing officer's decision, specifically the statement of the reporting officer and the conflicting testimony of Moles and the inmate witnesses.  In doing so, the court notes that, "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence."  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.  <u>Hill</u>, 472 U.S. at 455-56.  Thus, the petition will be denied with respect to Moles' claim that there was insufficient evidence to support the DHO's decision.

C.   <u>Investigation</u>

Moles also contends that BOP officials failed to conduct an investigation in violation of BOP policy.[2]  As noted above, following the issuance of the incident report, a prompt investigation must be undertaken.  28 C.F.R. § 541.14(b).  However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1421 (M.D.Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

The nature and scope of the BOP investigation is unclear from the record.[3] However, even if the court were to conclude that there was no investigation, the above finding that there is some evidence to support the DHO's finding of guilt demonstrates that Moles has clearly failed to establish that he was prejudiced by the purported failure to conduct an investigation.  <u>See</u> <u>Estrada v. Williamson</u>,  2006 WL 1722397, *4 (M.D.Pa. 2006).

---

[2]Such allegations fail to set forth a due process violation under <u>Wolff</u>.

[3]Moles raised the BOP's failure to investigate his claim during the administrative appeals process.  Without reference to any supporting documentation or facts, the National Inmate Appeals Administrator simply concluded that the claim was without merit.  (Doc. 1, p. 39).

D.    Sanctions

Moles also challenges the severity of the sanctions that he received.  The sanctions that may be imposed upon a finding of guilt of a "Greatest Category" offense include, *inter alia*, forfeiting earned statutory good conduct time or up to 100% of non-vested good conduct time, up to sixty days disciplinary segregation, and loss of privileges.  28 C.F.R. §541.13.  Moles is not entitled to relief on this ground as the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (loss of privileges and disciplinary segregation) plainly fall "within the expected parameters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions Moles' argument is without merit.

III.   **Conclusion**

For the above stated reasons, the petition for writ of habeas corpus will be denied.  An appropriate order will issue.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

Dated:        September 27, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALTER CURTIS MOLES,** | : | **CIVIL ACTION NO. 1:06-CV-0665** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **RONNIE HOLT, Warden, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## <u>ORDER</u>

AND NOW, this 27th day of September, 2006, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.   The petition for writ of habeas corpus (Doc. 1) is DENIED.

2.   The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge